IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 19-cr-135-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **SAFDER IQBAL**,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO FIRST STEP ACT OF 2018**

---

Before the Court is Defendant Safder Iqbal's Motion for Compassionate Release Pursuant to First Step Act of 2018 ("Motion"). (ECF No. 91.) For the reasons explained below, the Court denies the Motion.

### I. BACKGROUND

On June 6, 2019, Iqbal pled guilty to wire fraud in violation of 18 U.S.C. § 1343. (ECF Nos. 72, 73, 80.) On January 22, 2020, the Court sentenced Iqbal to 60 months' imprisonment and a three-year term of supervised release, and remanded him to the custody of the United States Marshals Service. (ECF No. 87.) Iqbal is incarcerated at the Great Plains Correctional Facility in Hinton, Oklahoma. (ECF No. 99 at 3.)

On April 13, 2020, Iqbal filed the *pro se* Motion. (ECF No. 91.) The Court construed the Motion as a Motion to Reduce Sentence Pursuant to First Step Act of 2018 and appointed counsel to represent Iqbal. (ECF No. 92.) The Government

submitted the Government's Response In Opposition to Defendant's Submission. (ECF No. 94.)

At the time Iqbal filed the Motion, he had not exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 94 at 2–10; ECF No. 95 at 3.) In his Partial Reply to Government's Response in Opposition to Defendant's Submission and Request for Additional Time for Further Briefing, Iqbal requested time to exhaust his administrative remedies, without objection from the Government. (ECF No. 95 at 3.) Iqbal also filed a Reply to Government's Response in Opposition to Defendant's Submission ("Reply"). (ECF No. 99.)

On July 21, 2020, Iqbal requested compassionate release or a reduction in his sentence from the Facility Administrator of the Great Plains Correctional Facility – GEO. (ECF No. 100-1 at 1.) On July 29, 2020, the Facility Administrator wrote a letter to defense counsel denying Iqbal's request, stating that Iqbal is ineligible for compassionate release or a reduction in sentence because he "has an ICE Detainer or the Public Safety Factor of Deportable Alien," and is therefore "ineligible for community based programs to include halfway house, home confinement, and compassionate releases." (*Id.*) Iqbal filed an Addendum to Defendant's Reply to Government's Response In Opposition to Defendant's Submission, notifying the Court that his request for release was denied.[1] (ECF No. 100.)

In the Motion and the Reply, Iqbal argues that the Court should reduce his

---

[1] The Government did not file any supplemental notice stating Iqbal has still not exhausted his administrative remedies. The Court finds Iqbal has exhausted his administrative remedies and will not separately address the Government's arguments (ECF No. 94 at 1–10) that he failed to do so.

sentence because he has demonstrated extraordinary and compelling circumstances under § 3582(c)(1)(A)(i) due to: (1) the COVID-19 pandemic; (2) family circumstances; and (3) a sentencing disparity.  (ECF No. 91; ECF No. 99 at 4–6.)

## II. ANALYSIS

### A.     First Step Act

Iqbal invokes the Court's authority to grant what is commonly referred to as "compassionate release."  The statutory basis for compassionate release is as follows:

> The court may not modify a term of imprisonment once it as been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

As this statutory language makes clear, the Court cannot simply order the BOP to release Iqbal for the remainder of his prison sentence.  The Court may only "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)."  *Id*.  To have Iqbal released from prison *immediately* under this authority, the Court would need to re-sentence him to a custodial period of time served (*i.e.*, 9 months).[2]

As stated above, Iqbal must demonstrate "extraordinary and compelling reasons" that are "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A) & (c)(1)(A)(i).  One Sentencing Commission policy statement explains that

> extraordinary and compelling reasons exist [if] * * * [t]he defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[2] In the Motion, Iqbal requests two different reductions of his sentence: (1) that the Court reduce his sentence to match his co-defendant's 10-month sentence; or (2) that the Court "have him departed [*sic*] at the earliest as the coronavirus is now in this prison . . . ."  (ECF No. 91 at 1.)
    The Reply states that "These additional circumstances impact the history  and characteristics of the Defendant as referenced in imposition of sentence considerations contained in 18 U.S.C. § 3553(a)(1) justifying a reduction in sentence."  (ECF No. 99 at 6.)

U.S.S.G. § 1B1.13 cmt. 1(A)(ii).

The Sentencing Commission also explains that "extraordinary and compelling reasons" exist if a defendant's family circumstances meet the following criteria:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13 cmt. 1(C)(i)–(ii).

The same policy statement contains a safety valve for unexpected circumstances specific to the inmate: "[E]xtraordinary and compelling reasons exist [if] * * * [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons [explicitly set forth]." *Id*. cmt. 1(D).  After careful consideration of the parties' submissions, the Court finds that Iqbal does not fall within any part of the policy statement.

    1.    <u>Iqbal's Medical Condition</u>

First, Iqbal argues that the COVID-19 pandemic has surged around the nation, and confinement in a prison population—particularly a private prison like the Great Plains Correctional Facility, which he argues has a lower standard of care and other institutional difficulties—increases the likelihood of contracting the disease.  (ECF No. 99 at 4.)  In the Motion (filed April 2020), Iqbal states there are two inmates at the Great Plains Correctional Facility who have tested positive for coronavirus.  (ECF No. 91 at 1.)  However, his Reply (filed July 2020) states that "Counsel has received conflicting

information concerning the presence of COVID in the facility." (ECF No. 99 at 5.)  No further information is provided.

Despite these contentions, in the Court's view Iqbal's circumstances do not provide an extraordinary and compelling reason to justify re-sentencing him to a period of time served at this time.  Iqbal is 29 years old, which puts him significantly below the high-risk age group (65 years or older) identified by the Centers for Disease Control and Prevention ("CDC").[3]  Further, as the Government underscores, he has not stated that he has any medical conditions at all, much less one that the CDC has identified as putting people at increased risk should they contract COVID-19.[4]  (ECF No. 94 at 12.)  Moreover, Iqbal does not assert that COVID-19 is currently running rampant in his facility.  Rather, he states that in April 2020 two inmates tested positive for coronavirus, and in July 2020, his counsel "has received conflicting information concerning the presence of COVID in the facility."  (ECF No. 91 at 1; ECF No. 99 at 5.)

The Court is unable to conclude that the current presence of the coronavirus at the Great Plains Correctional Facility, without more, is itself an extraordinary and compelling reason under the statute cited to reduce Iqbal's sentence to time served. *See United States v. Williams,* 2020 WL 3316004, at *2 (D. Colo. June 18, 2020) (denying motion for compassionate release where there were 47 active cases of

---

[3] Centers for Disease Control and Prevention, *Older Adults*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated September 11, 2020).

[4] Centers for Disease Control and Prevention, *People at Increased Risk*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html?CDC_AA_refVal =https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions% 2Fpeople-at-increased-risk.html (last updated September 11, 2020).

COVID-19 at facility); *United States v. Rodarmel*, 2020 WL 2840059, at *2 (D. Kan. June 1, 2020)("[T]he mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release.") (citing *United States v. Seymon*, 2020 WL 2468762 (C.D. Ill. May 13, 2020)).  The BOP website includes the Great Plains Correctional Facility on its map of institutions with current cases of the virus, stating there are 13 inmates with confirmed active cases and no staff with confirmed active cases.[5]  *See, e.g.*, *United States v. Heywood*, 2020 WL 4904050, at *5 (D.N.M. Aug. 19, 2020) (denying motion for compassionate release where there was a total of 10 confirmed COVID-19 cases at prison).  Moreover, in order to put this number into its proper context, the Court takes judicial notice of the fact that the Great Plains Correctional Facility has a total inmate population of 1,563.[6]  The Court also finds it significant that the Great Plains Correctional Facility has taken substantial steps to curtail the spread of the virus generally, with the Facility Administrator noting in his letter to defense counsel that the facility is following CDC and BOP Guidelines for social distancing, sanitation, education, screening of staff and inmates and quarantine, as well as established universal precautions.  (ECF No. 100-1.)

Many courts have denied prisoners' motions for compassionate release even when there are significant numbers of active COVID-19 cases at their facilities and even when the prisoners have serious pre-existing medical conditions.  *See, e.g.*, *United States v. Korn*, 2020 WL 1808213, at *5–7 (W.D.N.Y. Apr. 9, 2020) (denying

---

[5] *See* "COVID-19 Cases" (map), *at* https://www.bop.gov/coronavirus/ (last visited October 5, 2020).

[6] *See* "Federal Bureau of Prisons, CI Great Plains" *at* https://www.bop.gov/locations/ci/gpc/ (last visited October 5, 2020).

7

compassionate release where defendant suffered from a serious heart condition and his facility had confirmed cases); *United States v. Credidio*, 2020 WL 1644010, at *1 (S.D.N.Y. Apr. 2, 2020) (denying compassionate release where there were confirmed cases in the facility); *United States v. Hays*, 2020 WL 1698778, at *2–3 (S.D. Ala. Apr. 7, 2020) (similar); *but see, e.g.*, *United States v. Jenkins*, — F. Supp. 3d —, 2020 WL 2466911 (D. Colo. May 8, 2020) (Kane, J.) (granting compassionate release to 61-year-old man with multiple serious pre-existing medical conditions).

Under these circumstances, the Court concludes that "extraordinary and compelling reasons" do not exist at this time to warrant a reduction in Iqbal's sentence due solely to the COVID-19 pandemic.

2.   <u>Family Circumstances[7]</u>

Next, Iqbal argues the Court should release him because his mother, who resides in India, has a deteriorating medical condition, the cost of her care is increasing, and his family is increasingly incapable of meeting her medical expenses. (ECF No. 99 at 5.) He also states that his father died in January 2017, and his family has suffered financially as a result. (*Id.* at 5–6.) Iqbal provides no authority supporting his argument that these family circumstances warrant his release.

The family circumstances Iqbal has described do not fall within the extraordinary and compelling reasons for release due to family circumstances provided by the

---

[7] The Court notes that Iqbal's mother's asthma, depression, and health issues were included in the Presentence Investigation Report ("PSIR"). (ECF No. 80 at 12.) The PSIR also noted that Iqbal's father died in January 2017. (*Id.*)

Sentencing Commission, and the Court again concludes the safety valve provision for unexpected circumstances does not apply here.

### B. Other Arguments

Iqbal states that he was very cooperative with the prosecution and FBI agents, and understood the information he provided would benefit his case. (ECF No. 91 at 1.) However, his co-defendant was sentenced to 10 months' imprisonment, and he was sentenced to 60 months' imprisonment, which he considers a great and unbearable disparity. (*Id.*) He requests that the Court reduce his sentence to match that of his co-defendant. (*Id.*) The Reply does not raise a sentencing disparity argument. (*See* ECF No. 99.)

In addition, Iqbal explains that super cyclonic storm Amphan caused significant damage in West Bengal, where his family home is located. (*Id.* at 6.) The home suffered flooding and extensive damage, making it virtually uninhabitable. (*Id.*)

The Court agrees with the Government's position that the sentencing disparity argument is merely an attempt to reargue his original sentence and "not one of the legally authorized justifications contemplated by the First Step Act." (ECF No. 94 at 13.) Similarly, Iqbal's arguments regarding the cyclone are not contemplated as possible extraordinary and compelling circumstances under the First Step Act. The Court will not adjust Iqbal's sentence on these grounds.

### C. 18 U.S.C. § 3553(a) Factors

Finally, even if the Court found extraordinary and compelling circumstances in Iqbal's case, the Court would also need to find that the 18 U.S.C. § 3553(a) factors

weigh in favor of his early release from custody. See 18 U.S.C. § 3582(c)(1)(A). They do not.

As described at the sentencing hearing, Iqbal's sentence arises out of a sprawling scheme of deceit and fraud which resulted in substantial financial loss, much of which was suffered by very vulnerable victims, and was motivated by nothing more complicated than unvarnished, straightforward greed. Further, the crime of conviction in this case was not the result of a single impetuous or spontaneous act. Instead, Iqbal's criminal scheme to defraud required substantial planning and was the result of a continual reflective process.

Reducing Iqbal's sentence today to time served would mean that he would have served only approximately nine months of a 60-month sentence—a mere 15 percent. In the Court's view, such a relatively brief period of imprisonment would be insufficient to accomplish the goals of sentencing as set forth in § 3553(a); most significantly, it would fail to reflect the seriousness of the offense. Accordingly, the Court is unable to find that the § 3553(a) factors weigh in favor of Iqbal's early release from custody.

For all these reasons, compassionate release is inappropriate in Iqbal's case.

### III. CONCLUSION

For the reasons set forth above, Iqbal's Motion for Compassionate Release Pursuant to First Step Act of 2018 (ECF No. 91) is DENIED without prejudice to refiling should the circumstances at his facility or his family circumstances substantially change in a manner material to the analysis in this Order.

Dated this 6th day of October, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge